ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

DENISE M. OKI (CABN 311212)
Special Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7196
FAX: (415) 436-7234
Email: Denise.Oki@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRYAN PENNINGTON, <br><br> Defendant. | CASE NO. CR 18-0055 LB <br><br> **UNITED STATES' MEMORANDUM REGARDING ITS PROPOSED JUDGMENT** <br><br> Sentencing: May 10, 2018, 10:00am <br> Court: Hon. Laurel Beeler |

## I.  INTRODUCTION

The above-captioned case proceeded to trial on April 26, 2018. After approximately two and a half hours of testimony, the Court found the defendant guilty of three counts of permit requirement violations for anchoring a vessel in the Aquatic Park Cove, part of the San Francisco Maritime National Historical Park, in violation of 36 C.F.R. § 1.6(g)(1). At the conclusion of the bench trial the Court requested that the government submit a proposed judgment and briefing on the proposed sentence of a stay away order from the Aquatic Park Cove of the San Francisco Maritime National Historical Park. Sentencing is scheduled for May 10, 2018, at 10:30 a.m.

//

US SUBMISSION RE PROPOSED JUDGMENT
CR 18-0055 LB                              1

## II.    CURRENT STATUS OF DEFENDANT'S VESSEL

Previous motions by the government requested that the defendant's vessel, the white trimaran at issue in the bench trial, be removed from Aquatic Park Cove. That request and sentencing recommendation is now moot as the vessel has been out of Aquatic Park Cove since April 14, 2018. On April 14, 2018, the defendant's vessel broke anchor and was secured in Aquatic Park Cove by a mooring ball. The vessel dragged the mooring ball and headed toward the beach. San Francisco Police Department Marine Unit towed the vessel and end-tied it to the Hyde Street Harbor, managed by the Port of San Francisco and outside the boundaries of the San Francisco Maritime National Historical Park. Between April 14, 2018, and April 30, 2018, the vessel remained end-tied to the Hyde Street Harbor. Warning stickers had been placed on the vessel requesting that the defendant vacate and pay all Harbor slip fees.

On May 1, 2018, the vessel was towed from the end-tie location and secured at another location at the Hyde Street Harbor. The vessel has been chained to the dock and a posted "No Trespassing" sign has been placed on the vessel. The defendant has been able to access the vessel with an escort. According to the Port of San Francisco, the defendant currently owes over $5,000 in fees to the Port and a lien sale for the vessel has commenced.

## III.    PROPOSED JUDGMENT OF UNSUPERVISED PROBATION

I.    Proposed Language of Judgment

While the government believes that the defendant's consistent conduct, actions, and harm caused to a national park since September 2017 and up through trial are deserving of a period of custody under the statute, the government's primary interest in specific deterrence and general deterrence regarding blatant violations of regulatory requirements counsels in favor of a probation period during which the defendant cannot return to the Aquatic Park Cove on any trimaran, yacht, vessel, or any boat. Further, in light of the Court's comments at the conclusion of the bench trial regarding the defendant's supervision while on probation, the language in the proposed judgment submitted to the Court is the following:

> The defendant is hereby sentenced to probation for a term of: Unsupervised probation for a term of five years. As a condition of probation, Defendant is prohibited from entering the Aquatic Park Cove on any type of maritime vessel, including but not limited to a

trimaran, yacht, or boat.  The mandatory condition that the Defendant shall not commit another federal, state, or local crime is imposed.  The other mandatory conditions and the standard conditions of probation do not apply.

In general, a term of unsupervised probation and a condition of restricted access or action has been imposed on misdemeanor defendants in this district and other districts.  The sentencing language above is largely based on a previous pro se misdemeanor defendant's sentence imposed in this courthouse.  In 2015, Magistrate Judge James sentenced Jesse Franklin Swartz, Jr. to one year of unsupervised probation and, as a condition of probation, "prohibited [the defendant] from having any contact with [J.H.], directly or indirectly, in person, in writing, by telephone, by email, by fax, or through third persons.  The standard conditions of probation do not apply." *United States v. Swartz*, 15-CR-00351 MEJ, Dkt. Entry No. 20.  Swartz was charged by Information with one count of disobeying a lawful order, in violation of 41 C.F.R. § 102-74.385 for failing to comply with a Federal Protective Service Officer's law direction to leave the Ninth Circuit Court of Appeals library.  *Id.* At Dkt. Entry No. 1.

Two other districts have sentenced misdemeanor defendants to a term of unsupervised probation and a stay away order as a condition of probation.  In the Eastern District of California, after pleading guilty to two 36 C.F.R. traffic violations and possession of a controlled substance, a defendant was sentenced to a one-year term of unsupervised probation, a fine, and ordered to stay away from Yosemite National Park for the full term of his probation.  *United States v. Hubenig*, 2010 U.S. Dist. LEXIS 80179, United States District Court for the Eastern District of California, July 1, 2010.  This case was appealed to the District Court on a request of *coram nobis* relief regarding the issue of whether the defendant would have chosen to plead guilty had he known the immigration consequences of his plea.  Of note, this case was not challenged on any grounds regarding the sentence of a stay away order from Yosemite National Park.

In the District of Montana, a defendant was sentenced to a one-year term of unsupervised probation, with the conditions that the defendant not commit another crime and "not enter any United States District Court facility in the District of Montana without permission from the United States District Judge who presides over the division in which a particular court facility is located." *United States v. Boothe*, 2012 U.S. Dist. LEXIS 78896; United States District Court for the District of Montana,

Missoula Division, June 6, 2012.  On appeal to the District Judge, the court found that the "magistrate judge could reasonably have believed that the condition that Boothe not enter federal courthouses in the District of Montana without the permission of the presiding district judge for the term of one year is reasonably necessary to promote respect for the law, protect the public, and achieve specific deterrence. § 3553(a)(2)(A)-(C)."  The District Court continued stating, "Boothe disrupted a court proceeding, advanced on an attorney, had to be restrained by court security, and disobeyed the orders of the Deputy United States Marshal.  The magistrate reasonably determined this condition was necessary to protect the court, court staff, and attorneys from similar disruptions.  Indeed, courts regularly uphold conditions imposing geographical and associational conditions that are intended to accomplish specific deterrence. *See United States v. Watson*, 582 F.3d 974, 984 (9th Cir. 2009) (citing cases and upholding condition banning defendant from the city of San Francisco unless granted permission to enter by his probation officer)" (internal cites included).  The Ninth Circuit affirmed Watson's supervised release condition that he "not come to the City and County of San Francisco, without the prior approval of the probation officer," primarily based on the record that included Watson's history of repeated misconduct, his association with the "Eddy Rock" gang in San Francisco, and the poor support he has received from his family and surrounding home environment. *Watson*, 583 F.3d at 983.  The *Watson* decision concludes the analysis of this travel restriction condition by stating, "in sum, we conclude that the challenged condition is reasonably related to the goals of rehabilitation and deterrence and is no broader than legitimately necessary to serve those purposes. *See Bee*, 162 F.3d at 1236 ("[E]ven very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public") (internal citation included).

II. The Defendant's Offense Conduct and Section 3553(a) Factors

A period of five years unsupervised probation is warranted in this case given the defendant's extended period of time disrespecting the laws and regulations governing the San Francisco Maritime National Historical Park, including disrespecting Park property and threatening National Park Service employees and U.S. Park Police officers; disrespecting the other visitors and people recreating in the Park, by fouling the waters in the Cove and creating a hazard by not properly anchoring the vessel; and disrespecting the judicial system.

US SUBMISSION RE PROPOSED JUDGMENT
CR 18-0055 LB                                                     4

The key 3553(a) factors here are the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1), the need for the sentencing goals to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment, § 3553(a)(2)(A), and the need to provide adequate deterrence to criminal conduct, § 3553(a)(2).

A. The nature and circumstances of the offense and characteristics of the defendant support a five year probationary sentence.

The government recognizes that the three charges that the defendant has been convicted of are regulatory violations and may, standing in isolation, not warrant a five-year probationary sentence. This case and this defendant's actions are not in isolation however. The defendant's relevant conduct while being in violation of the regulatory statutes all support a sentence of the maximum time of probation. Testimony at trial, explored on cross examination, described the accommodating allowances the National Park Service gave to the defendant when the defendant first arrived in the Cove in early September 2017. But the defendant refused to leave, refused to get a permit to stay, and treated the national park with complete disrespect. As detailed in previous motions, the safety concerns that the defendant caused while illegally in the Cove include, among others, likely dumping of human waste into Aquatic Park Cove because the vessel does not have operable or adequate plumbing, failure to properly anchor the vessel multiple times endangering swimmers, national historic vessels, and the pier, obstructing the U.S. Coast Guard and U.S. Park Police, and threatening National Park Service employees.

The defendant's conduct is ongoing. Since September 25, 2017, the U.S. Park Police have been in contact or have written a report regarding the defendant's actions over 100 times. The law enforcement contacts range from reminding the defendant of the permit requirement to citing him for trespassing in the Senior Center to arresting him for threatening Park employees. Again, this is not a situation of violating the permit requirement in complete isolation. The defendant's actions while violating the permit requirement is all relevant conduct that the court should consider when sentencing the defendant.

//

B. The defendant's complete lack of respect for the law and his fellow citizens warrants a sentence of five years probation.

A five year probationary sentence will promote respect for the law and provide just punishment. It is clear from the defendant's actions and conduct with the National Park employees, law enforcement, and the judicial system that he does not believe the rules and laws apply to him. A period of probation for five years is an appropriate sentence for someone who chooses to act without deference to the criminal justice system. Currently, the defendant has an open case in the San Francisco Superior Court for misdemeanor threats against National Park employees. The defendant was ordered to stay away from the bleachers at Aquatic Park Cove as a condition of his release in the state case. The government learned that the defendant was arrested today for violating the stay away order imposed by the state judge. This all too common pattern of disregarding the rules and laws set in place to protect society supports a long period of probation.

C. A probationary sentence will provide adequate deterrence to criminal conduct.

A period of time during which the defendant is not allowed to sail in the Aquatic Park Cove is a necessary deterrent for this individual specifically and is a general deterrent against flagrant violations of federal regulations. A five year period that the defendant is barred from entering the national park that he has disrespected and injured for over seven months is appropriate and just. On April 5, 2018, after the defendant's anchor broke for the third time since September 2017, the defendant's vessel was towed to the Hyde Street Harbor and end-tied until the vessel could be determined seaworthy. On April 13, 2018, the vessel was sailed from the Harbor back in the Aquatic Park Cove. Even after criminal charges had been filed against him and even after the Park Police and National Park Service employees explained that he needed a permit to anchor overnight in the Cove, the defendant made the deliberate choice to sail back into the Cove.[1] Without the condition that he stay away from Aquatic Park Cove, the defendant will very likely find a way to sail back into the Cove. The government is also concerned that

---

[1] As mentioned in the current status of the vessel, the next day, April 14, 2018, the vessel once again broke anchor and the defendant tried to secure the vessel to a mooring ball. This raises both an issue of whether the vessel was or will be seaworthy in the future and a pattern of behavior where the defendant has sailed the vessel out of Aquatic Park Cove for a period of time or the vessel has been towed away and has returned without seeking requesting a permit from the Park.

US SUBMISSION RE PROPOSED JUDGMENT
CR 18-0055 LB                                    6

1  the defendant may try to sail another vessel into the Cove and has tried to address that concern in the
2  proposed judgment.

## IV. CONCLUSION

The government respectfully recommends a sentence of five years unsupervised probation and, as a condition of probation, that the defendant be prohibited from entering the Aquatic Park Cove on any type of marine vessel for the full term of probation.

DATED: May 3, 2017                                    Respectfully submitted,

                                                      ALEX G. TSE
                                                      Acting United States Attorney


                                                             /s/
                                                      DENISE M. OKI
                                                      Special Assistant United States Attorney